**BURGETT, INC., Plaintiff,**

v.

**AMERICAN ZURICH INSURANCE COMPANY, Defendant.**

No. 2:11–cv–01554–MCE–JFM.

United States District Court, E.D. California.

Nov. 23, 2011.

David A. Gauntlett, Gauntlett & Associates, Irvine, CA, for Plaintiff.

Lane John Ashley, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, CA, for Defendant.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR., District Judge.

This matter arises out of Plaintiff, Burgett Inc.'s ("Plaintiff" or "Burgett") motion for partial summary judgment regarding Defendant's alleged duty to defend the underlying action filed against Plaintiff by Persis International Inc.[1] and Edward F. Richards (collectively, "Persis").

Defendant, American Zurich Insurance, Inc. ("Defendant"), Plaintiff's general liability insurance carrier opposes the motion. For the reasons set forth below, Plaintiff's motion is GRANTED.[2]

### BACKGROUND [3]

Plaintiff is a corporation organized under the laws of the State of California with

---

1. *Persis Internationl, Inc. v. Burgett, Inc.,* 1:09–cv–07451 (N.D.Ill.2011). Plaintiff attached the relevant complaint in the underlying action to its complaint. (*See* Pl.'s Compl., filed June 08, 2011, [ECF No. 1, Ex. 2].)

2. Because oral argument will not be of material assistance, the Court orders these matters submitted on the briefs. E.D. Cal. L.R. 78–230(h).

3. This case presents almost purely legal issues. Thus, the facts are, for the most part, undisputed. Where the facts are disputed, the Court recounts Defendant's version of the facts as it must on a motion for summary judgment. In this regard, the Court notes that, although not required by the Court's local rules, Plaintiff did not file a separate statement of "Disputed Facts." Thus, in laying out the relevant facts, the Court cites to Plaintiff's statement of undisputed fact. (*See*

its principal place of business in Sacramento, California. (UF ¶ 1.) Defendant is a corporation licensed to sell insurance in the State of California, with its principal place of business in Illinois. (UF ¶ 2.)

Zurich issued to Burgett, the named insured, a general commercial liability policy for the period May 9, 2003, through May 9, 2004. (UF ¶ 3.) This policy provides indemnity for any personal or advertising injury caused by an offense committed by Burgett during the policy period and promises a defense of suits that potentially seek those types of damages. (UF ¶ 4.)

According to the relevant language of the policy, " '[a]dvertisement' means a notice that is a broadcast published to the general public of specific market segments of [Plaintiff's] goods, products or services for the purpose of attracting customers or supporters." [4] (UF ¶ 5.) Personal or advertising injury encompasses "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or ganizations's good, products or services." (*Id.*) The policy also includes an exclusion for " 'personal and advertising' injury arising out of the infringement of copyright, patent, trademark trade secret or other intellectual property." (UF ¶ 6.)

In the matter underlying this duty to defend action, Persis filed a first amended complaint on March 26, 2010, in the Northern District of Illinois, alleging that Plaintiff made false statements to another company, Samick, about its ownership of the "SOHMER" trademark, a trademark Persis alleges it owned. (UF ¶¶ 8–9.) The

Persis complaint, in pertinent part, alleges as follows:

> In 2003, Samick began advertising and selling pianos bearing the SOHMER and SOHMER & CO. trademarks in the United States, including through an [i]nternet website.
>
> At all relevant times, Burgett's representing to samick that it had valid and enforceable rights in and to the SOHMER trademark, negotiating and entering into the purported licensing agreement with Samkick, accepting compensation from Samick under the purported licensing agreement, and holding itself out to Samick and the world as the rightful owner of the SOHMER trademark, constituted an inducement of Samick's act of infringement and unfair competition under federal and common law.

(UF ¶ 11.) The gravamen of Persis' underlying complaint is that by "holding itself out to Samick and the world as the rightful owner of the SOHMER trademark . . . Burgett is contributorily liable for Samick's acts of trademark infringement and unfair competition under federal law and common law arising out of Samick's use of SOHMER & SOHMER & CO. trademarks." (*Id.*) There is no dispute that the alleged wrongful conduct occurred within Defendant's 2003, 2004 and 2005 policy periods. (UF ¶ 12.)

Plaintiff provided Defendant notice of the Persis action on November 3, 2010, thereby tendering defense of that matter in accordance with the terms of the policy. (UF ¶ 13.) Zurich responded on December 13, 2010, declining to defend or in-

---

Pl.'s Separate Stmt. Of Undisp. Material Fact ["UF"], filed July 7, 2011, [ECF No. 8–2].) Moreover, the Court, when necessary, cites to the declaration of Tom Lagomarsino, Vice President of Burgett, and the *exhibits* attached thereto. (Decl. Of Tom Lagomarsi-

no ["Lagomarsino Decl."], filed July 7, 2011, [ECF No. 8–3].)

4. There is no dispute that the allegedly improper statement made by Burgett constitutes an advertisement in accordance with the terms of the policy.

demnify Plaintiff in the underlying Persis action. (UF ¶ 15.) Defendant denied defense of the action on the basis that "the definition of 'personal and advertising injury' ha[d] not been met" and because the trademark exclusion under the policy would apply to excuse Defendant from defending the action. (UF ¶ 16.)

## STANDARD

A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment. *See California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998). Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' " *Id.* at 324, 106 S.Ct. 2548. Indeed, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Id.* at 251–52, 106 S.Ct. 2505.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct.

1348 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd*, 810 F.2d 898 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356.

## ANALYSIS

### A. Duty to Defend

Plaintiff contends that Defendant improperly denied defense of the underlying Persis action because the complaint "alleges misstatements by [Plaintiff] regarding Persis' legal rights to the SOHMER trademark," thus providing "potential grounds for liability within [Defendant's] 'personal injury' coverage for both 'defamation' and 'disparagement.'"
(Pl.'s Mot. for Summ. J., filed July 07, 2011, [ECF No. 8], at 1:11–13.) Defendant asserts that, "because the allegations in the Persis lawsuit do not assert a claim for defamation or disparagement, there was and is no duty to defend." (Def.'s Opp'n, filed July 28, 2011, [ECF No. 10], at 1:26–28) Similarly, Defendant maintains that there is no conceivable theory which could bring the allegations in the underlying complaint within the coverage pursuant to the policy because Plaintiff's alleged statements to Samick that it owned the SOHMER trademark did not specifically reference Plaintiff, and thus, Plaintiff is not potentially liable for disparagement or defamation. Moreover, Defendant argues that it has no duty to defend because the trademark exclusion would apply to bar any coverage for liability based on the specific claims asserted in the underlying complaint.

An insurer's evidentiary burden is particularly high in a duty-to-defend case. While "the insured must prove the existence of a potential for coverage, ... the insurer must establish the absence of any such potential." *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Id.*

The duty to defend extends to all suits that raise the "possibility" or "potential" for coverage. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *accord Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993); *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (1986).

Courts in California have frequently stated that an insurer's duty to defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). Thus, under California law, an insurer must defend against

groundless, false, or even fraudulent claims, regardless of their merits. *Horace Mann*, 4 Cal.4th at 1086, 17 Cal.Rptr.2d 210, 846 P.2d 792. In fact, an insurer is excused from its duty to defend only when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (*quoting Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 n. 15, 54 Cal. Rptr. 104, 419 P.2d 168 (1966)). The duty to defend may exist even where coverage is in doubt and ultimately does not develop. *Id.* at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (*quoting Saylin v. Cal. Ins. Guar. Ass'n*, 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986)).

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Storek v. Fid. & Guar. Ins. Underwriters, Inc.*, 504 F.Supp.2d 803, 807 (N.D.Cal.2007) *aff'd*, 320 Fed.Appx. 508 (9th Cir.2009) (*quoting Horace Mann*, 4 Cal.4th at 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (citing *CNA Cas.*, 176 Cal.App.3d at 607, 222 Cal.Rptr. 276). The duty to defend extends beyond the specific claims set forth in the third-party complaint. Indeed, "the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured. . . ." *CNA Cas.*, 176 Cal.App.3d at 606, 222 Cal. Rptr. 276. "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir.2002).

An insurer's duty to defend is not limited to the face of the underlying complaint. Rather, "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 510, 108 Cal. Rptr.2d 657 (2001); *see also Swain v. Cal. Cas. Ins. Co.*, 99 Cal.App.4th 1, 8, 120 Cal.Rptr.2d 808 (2002) (emphasizing the importance of examining facts alleged in the complaint). In addition, "facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Horace Mann*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. "In determining whether or not the [insurer is] bound to defend . . . courts do not examine only the pleaded word but the potential liability created by the suit." *Gray*, 65 Cal.2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168. Courts have noted that because "modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources." An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. *Id.* at 276–77, 54 Cal.Rptr. 104, 419 P.2d 168.

"[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36

Cal.4th 643, 654, 31 Cal.Rptr.3d 147, 115 P.3d 460 (2005).

While the duty to defend is broad, "[a]n insurer … will not be compelled to defend its insured when the potential for liability is tenuous and far-fetched." *Lassen Canyon Nursery, Inc. v. Royal Ins. Co.*, 720 F.2d 1016, 1018 (9th Cir.1983). In other words, the duty to defend does not require an insurer to undertake a defense as to claims that are factually and legally untethered from the third party's complaint. *See e.g., Storek,* 504 F.Supp.2d at 812; *Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 615–16 (9th Cir.2004).

### 1. Defamation

Under California law,[5] defamation consists of either libel or slander. Cal. Civ. Code § 44. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ.Code § 45. [15] Slander consists of "a false and unprivileged publication, orally uttered … which: (1) charges any person with crime, or with having been indicted, convicted, or punished for crime; (2) imputes in him the present existence of an infectious, contagious, or loathsome disease; (3) tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; (4) imputes to him impotence or a want of

chastity; or (5) which, by natural consequence, causes actual damage.

The California Supreme Court, in adherence to United States Supreme Court precedent, has held that "[i]n defamation actions the First Amendment … requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning' the Plaintiff in some way." *Blatty v. New York Times Co.* 42 Cal.3d 1033, 1042, 232 Cal.Rptr. 542, 728 P.2d 1177. This limitation on defamation actions "derives directly and ultimately from the First Amendment." *Id.* Thus, in order to demonstrate that there is potential for liability in the underlying Persis claim, Plaintiff must show that there are factual allegations that it made *specific reference* to Persis. *Id.*

In this case, Defendant's duty to defend cannot be triggered on a defamation theory because the underlying Persis complaint does not allege that Plaintiff made any defamatory statement that either specifically referred to, or was "of and concerning" Persis. Thus, there is no potential for coverage under the Zurich policy for defamation because the "of and concerning" element required to establish a claim for defamation is wholly absent from the underlying complaint. To this end, Defendant's duty to defend is not triggered under that provision of the Zurich policy covering "material that slanders or libels a person or organization" because there is no potential for coverage thereunder.

The case law relied on by Plaintiff for its contention that there is a potential for coverage under the defamation provision of the policy is wholly inapposite. (*See* Pl.'s Mot at 914–19 (citing *Atlantic Mutual*

**5.** There is no dispute that, in this diversity action, California law applies to determine the scope Defendant's duty to defend.

*Ins. Co. v. J. Lamb, Inc.,* 100 Cal.App.4th 1017, 123 Cal.Rptr.2d 256 (2002); *Amerisure Ins. Co. v. Laserage Tech. Corp.,* 2 F.Supp.2d 296, 304 (W.D.N.Y.); *Winokur, Winokur v. Commerce Ins. Co.,* 2004 WL 1588259 (Mass.Sup.Ct.2004).)) Specifically, in each of those cases, the Plaintiff in the underlying action specifically alleged that the Plaintiff made specific comments "of and concerning" the Plaintiff in the underlying action. In Both *J. Lamb* [6] and *Laserage,* the underlying complaint alleged that the party asserting a duty to defend made statements that the underlying Plaintiff was infringing a trademark. Those courts held that there was potential coverage under the policy for advertising injury because the party seeking defense of the underlying action made overt statements specifically referencing plaintiffs and their business, according to the underlying complaint. Moreover, in *Winokur,* the court held that there was potential coverage under the advertising injury provisions of the relevant policy for charging the "underlying Plaintiff and its officers and directors with malicious abuse of process, malicious interference with advantageous business relationship, and conspiracy." *Winokur,* 2004 WL 1588259 at *1. Filing a lawsuit naming the underlying Plaintiff clearly satisfies the specific reference requirement for stating a defamation claim. Conversely, in this case, Plaintiff has failed to demonstrate the underlying complaint meets the specific reference requirement, and thus, there is no factual or legal basis for Plaintiff's contention that there is potential coverage under the defamation provision of the policy.

## 2. Disparagement

■ At its base, an action for product disparagement "involves the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff." *Total Call Int'l Inc. v. Peerless Ins. Co.,* 181 Cal. App.4th 161, 169, 104 Cal.Rptr.3d 319 (2010) (*quoting Polygram Records Inc. v. Superior Court,* 170 Cal.App.3d 543, 549, 216 Cal.Rptr. 252 (1985)).

■ Under California law, in order to establish a duty to defend, Burgett must show that the underlying Plaintiff alleges that it made derogatory statements about Persis products, causing it pecuniary damages. *Microtec Research Inc. v. Nationwide Mut. Ins. Co.,* 40 F.3d 968, 972–973 (9th Cir.1994); *Truck Ins. Exchange v. Bennett,* 53 Cal.App.4th 75, 89, 61 Cal. Rptr.2d 497 (1997). A requisite element of a claim for disparagement is that the alleged disparaging publication specifically reference the plaintiff; this element can be met by either direct or indirect reference. *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.,* 590 F.Supp.2d 1244, 1252–1253 (*citing Blatty,* 42 Cal.3d at 1042, 232 Cal. Rptr. 542, 728 P.2d 1177).

■ In this case, Defendant's contention that there is no potential for coverage under the disparagement provision of the policy because the underlying complaint does not allege that Plaintiff specifically references Persis is unavailing. Contrary to Defendant's assertion, the underlying complaint makes sufficient allegations that could potentially establish a claim for disparagement by *implication.* Therefore, it was improper for Defendant to deny defense of the underlying Persis action.

*E.piphany* provides particularly insightful guidance. *E.piphany* was also a duty to defend case based on a nearly identical disparagement policy provision in which

---

**6.** In *J. Lamb,* the only California authority cited by Plaintiff, the Court did not find that the statements constituted defamation; it only found that the allegations potentially stated a claim for disparagement.

the underlying Plaintiff alleged that E.piphany released a public statement that it "offer[ed] the *only* full footprint CRM suite natively built on a service oriented J2EE architecture." *Id.* at 1249 (emphasis added). The underlying Plaintiff alleged that "[s]uch representations have caused E.piphany to gain, and Sigma to lose, profits, market share, reputation, and goodwill." *Id.* at 1250. The court held that because E.piphany "falsely stated that it was the 'only' producer of 'all java' and 'fully J2EE software solutions,'" the allegations in the underlying complaint demonstrated "a claim for disparagement by 'clear implication'" *Id.* at 1253 (*citing Blatty*, 42 Cal.3d at 1044 n. 1, 232 Cal. Rptr. 542, 728 P.2d 1177). Importantly, the *E.piphany* court relied on a similar case from the Northern District of Illinois, the same district where the underlying Persis action is pending, which held that a claim for disparagement by implication may lie where a competitor claims that is "more effective than or superior to ... other drugs available." *See Knoll Pharmaceutical Co. v. Automobile Ins. Co. Of Hartford*, 152 F.Supp.2d 1026, 1036 (N.D.Ill.2001).

Similarly to the facts underlying *E.piphany*, in this case, Burgett represented to Samick that it was the *only* holder of the SOHMER trademark. In the underlying complaint, similar to the underlying complaint in *E.piphany*, Persis alleges that Plaintiff made false representations that harmed Persis "by implying to the marketplace that Burgett had the superior right to use the SOHMER trademark," and thus, by implication, represented that Persis did not have the rights to the SOHMER trademark. (UF ¶ 11.) Persis further alleges that Plaintiff's "willfull statements to Samick and others regarding [Plaintiff's] use of the SOHMER trademark, created a likelihood of confusion or of misunderstanding as to the source, sponsorship or approval of [Plaintiff's] and/or Persis goods, as well as ... confusion of or misunderstanding as to affiliation, connection or association of [Plaintiff] and Persis." (UF ¶ 11.)

At the time of the alleged misrepresentations, Persis contends that Plaintiff "was fully aware that Persis was using the SOHMER trademark in commerce." (Pl.'s Compl., Ex 2 ¶ 41.) The Court concludes that these allegations, taken as a whole, create potential liability and thus, potential coverage for disparagement of Persis' product—the alleged ownership of the SOHMER trademark.

While *E.piphany* properly supports the finding of a potential claim for disparagement by implication, the cases relied on by Defendant—*Jarrow Formulas v. Steadfast Ins. Co.*, 2011 WL 1399805 (C.D.Cal.2011); *Total Call*, 181 Cal.App.4th 161, 104 Cal. Rptr.3d 319.—are easily distinguishable. In both cases, the underlying plaintiff alleged that the party seeking defense falsely advertised the benefits of their products, which, in turn, deceived consumers, detrimentally affecting the reputation and goodwill of the market for that product type generally and the underlying plaintiffs specifically. *Jarrow*, 2011 WL 1399805 *2–3; *Total Call*, 181 Cal.App.4th at 165–166, 104 Cal.Rptr.3d 319. In *Jarrow*, "as in *Total Call International*, the [c]ourt conclude[d] that this falls within the [p]olicy's exclusion for advertising injury arising out of 'the failure of goods products or services to conform with advertised quality or performance.'" *Jarrow*, 2011 WL 1399805 at *6. Unlike these cases, Defendant does not contend that the allegations fall under any exclusion for false advertising. (*See generally* Def.'s Opp'n.)

Indeed, in *Jarrow*, the court expressly distinguished *E.piphany* by pointing out that "the underlying complaint, brought by [E.piphany's] direct competitors, alleged that the insured stated that it was the *only*

producer of a certain product, resulting in damage to the competitor's market share, sales, and reputation." *Jarrow*, 2011 WL 1399805 at \*7 (emphasis in original). Similarly here, the underlying complaint alleges that Plaintiff misrepresented that it was the *only* owner of the SOHMER trademark, "resulting in damage to [Persis'] market share, sales, and reputation." *Id.* Moreover, in this case, a potential finding of disparagement by implication is bolstered by the fact that Persis alleges that it was the *only* owner of the SOHMER trademark.

Given the factual and legal similarities between this case and *E.piphany*, and since there is established precedent upholding claims for disparagement by implication in the district in which that action is pending, Plaintiff is potentially liable for disparagement by implication. Thus, in this case, where the Court must resolve any question as to the duty to defend in the insured's favor, the Court finds that the underlying complaint alleges sufficient facts to establish the potential for coverage, and thus, the duty to defend was triggered. *Horace Mann*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792.

### 3. Trademark Exclusion

Defendant argues that "[a]ll of the causes of action in the Persis lawsuit either allege trademark infringement directly (first cause of action) or are dependent on the trademark infringement." As such, Defendant contends "the trademark exclusion in the Zurich policy applies to preclude coverage for all the claims in the Persis lawsuit." (Def.'s Opp'n at 14:7–9.) Defendant's position, however, ignores the relevant standard applicable to an insurer's duty to defend. Specifically, "Since the modern procedural rules focus on the facts of the complaint and extrinsic evidence, the duty to defend should be fixed by the facts which the insurer learns from the complaint." *Gray*, 65 Cal.2d at 276, 54

Cal.Rptr. 104, 419 P.2d 168. Thus, the fact "that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654, 31 Cal.Rptr.3d 147, 115 P.3d 460 (2005). As set forth above, while the underlying complaint does not explicitly state a claim for disparagement, the Court finds that the complaint could be amended to state a claim for the same. Thus, the trademark exclusion does not apply to bar coverage.

### B. Attorneys' Fees and Prejudgment Interest

Plaintiff contends that it is entitled to reasonable attorneys' fees because Defendant has breached its duty to defend the underlying Persis action. Moreover, Plaintiff contends that it is entitled to prejudgment interest. Defendant does not contest that Plaintiff is entitled to reasonable attorneys' fees if the Court finds that it breached its duty to defend. However, Defendant does assert that Plaintiff is not entitled to prejudgment interest because the amount of damages is in dispute and has not been established.

Under California law, where an insurer wrongfully "refuse[s] to defend an action against its insured ... the insurer is liable for the total amount of the fees unless the insurer produces undeniable evidence that it is not liable for all of the attorney's fees." *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal.3d 553, 564, 91 Cal.Rptr. 153, 476 P.2d 825 (1970). When the underlying complaint states an injury potentially covered by the insurance contract, the insurer breaches its duty to defend by refusing to defend its insured. *Id.* (*citing Gray*

*v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168). Furthermore, "[a] liability insurer's breach of the duty to defend results in the insurer's forfeiture of the right to control defense of the action or settlement, including the ability to take advantage of the protections and limitations set forth in the statute governing liability insurers' duty to provide independent counsel." *Intergulf Devel. v. Super. Ct.*, 183 Cal.App.4th 16, 107 Cal.Rptr.3d 162 (2010).

■■■■ California Civil Code § 3287 provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day...." Under this code section, "the court has no discretion, but must award prejudgment interest upon request, from the first day there exists both a breach and a liquidated claim." (*Howard v. Am. Nat. Fire Ins. Co.*, 187 Cal.App.4th 498, 535, 115 Cal.Rptr.3d 42 (2010) (*quoting N. Oakland Med. Clinic v. Rogers*, 65 Cal. App.4th 824, 828, 76 Cal.Rptr.2d 743 (1998)). Courts generally apply a liberal construction in determining whether a claim is certain or liquidated. *Id.* (*citing Chesapeake Indus., Inc. v. Togova Enter., Inc.*, 149 Cal.App.3d 901, 907, 197 Cal. Rptr. 348 (1983)). The test for determining certainty under section 3287(a) is whether the defendant knew the amount of damages owed to the claimant or could have computed that amount from reasonably available information. *Id.* (*citing Chesapeake Indus., Inc.*, 149 Cal.App.3d at 907, 197 Cal.Rptr. 348)). Uncertainty as to the defendant's liability is irrelevant to the determination. *Boehm & Assocs. v. Workers' Comp. Appeals Bd.*, 76 Cal. App.4th 513, 517, 90 Cal.Rptr.2d 486 (1999). "The certainty required by section 3287(a) is not lost when the existence of liability turns on disputed facts but only

when the amount of damages turns on disputed facts." *Howard*, 187 Cal.App.4th at 536, 115 Cal.Rptr.3d 42 (*citing Olson v. Cory*, 35 Cal.3d 390, 402, 197 Cal.Rptr. 843, 673 P.2d 720 (1983)).

■■■■ Under California law, Plaintiff is entitled to reasonable attorneys' fees as Defendant has breached its duty to defend by failing to provide Plaintiff with a defense in the Persis action, which states an injury potentially covered by the insurance contract. However, neither party has submitted any evidence that would allow the Court to calculate the proper amount of fees it should award. Accordingly, the Court finds that Plaintiff is entitled to reasonable attorneys' fees, but the amount of attorneys' fees that Plaintiff is entitled to remains a question of fact. To this end, the Court requests additional briefing from the parties as to the amount of attorneys' fees to which Plaintiff is entitled.

■■■■ It is entirely unclear at this point whether Defendant knows or is capable of computing the amount of damages that are potentially owed to Plaintiff. It is also unclear whether there is reasonably available information about the amount of damages potentially owed to Plaintiff. Furthermore, it is likely that the amount of damages will be disputed between the parties. Thus, it is not appropriate for the Court to order prejudgment interest at this time.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Specifically:

1. Plaintiff's motion for summary judgment as to Defendant's duty to defend the underlying Persis action is GRANTED.

2. Plaintiff is awarded reasonable attorneys' fees for breach of its duty to defend the underlying Persis action.

However, the Court requires additional briefing as to the amount of attorneys' fees to which Plaintiff is claiming. Such additional briefing from Plaintiff is to be filed not later than forty-five (45) days after this electronic order is filed.

3. The Court orders that Plaintiff is not entitled to prejudgment interest.

IT IS SO ORDERED.