Filed 5/15/13  Pasternack v. Capozzoli's Pizzeria CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LAWRENCE PASTERNACK, | D060023 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00052924-CU-FR-NC) |
| CAPOZZOLI'S PIZZERIA & RESTAURANT, INC., | |
| Defendant and Respondent; | |
| CHARLES J. CAPOZZOLI[1], | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Reversed and remanded with directions.

---

1    On April 19, 2013, Donna Marie Capozzoli and Janine Bayme were substituted as parties to this action instead and in the place of Charles J. Capozzoli, deceased, as the Special Administrators of the Estate of Charles J. Capozzoli.

Hatton, Petrie & Stackler, Arthur R. Petrie, II, John A. McMahon for Plaintiff and Appellant Lawrence Pasternack.

Frame & Matsumoto, Ted R. Frame for Defendants and Appellants, Donna Marie Capozzoli and Janine Bayme as Special Administrators of the Estate of Charles J. Capozzoli.

The Kushner Law Firm, Michael B. Kushner, Kalab A. Honey for Defendant and Respondent, Capozzoli's Pizzeria & Restaurant, Inc.

Lawrence Pasternack appeals from a judgment entered after the trial court confirmed an arbitration award in favor of respondents Charles J. Capozzoli and Capozzoli's Pizzeria & Restaurant, Inc. (CPRI). Pasternack contends the court should have vacated the arbitration award because the arbitrator erroneously failed to consider additional evidence he had presented between the issuance of the arbitrator's "interim award" and the final arbitration award. Pasternack alternatively claims the final arbitration award was gained through fraud, corruption or other undue means. Charles Capozzoli cross-appeals, contending the court erred because after it issued a judgment that included respondents' requested prejudgment interest, the court issued an unauthorized "amended judgment" withdrawing the prejudgment interest award. We affirm the decision to confirm the arbitration award, but reverse the trial court's May 27, 2011 amended judgment and remand the matter with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Pasternack invested $250,000 in CPRI, an Italian restaurant venture set up and run by Joseph and Kristie Capozzoli, a married couple. Pasternack received 1,616 shares for his investment in the business under a Stock Purchase Agreement. Pasternack subsequently advanced an additional $200,000 to Joseph and Kristie for investment in the business.[2]

The parties filed articles of organization for West Coast Eats, LLC (WCE) with the California Secretary of State. Charles Capozzoli, Joseph's father, assumed sole ownership of CPRI in name only, and received 3,000 shares, which Joseph and Kristie could acquire at any time. The parties understood Charles was doing them a favor because Joseph's prior convictions for driving under the influence disqualified him from owning or managing a licensed restaurant under the rules of the California Department of Alcoholic Beverage Control. Moreover, Pasternack had declined to apply for the license to avoid disclosing his finances to the authorities.

In 2009, Pasternack demanded arbitration with the American Arbitration Association (AAA) as required under the Shareholder's Agreement, alleging breach of fiduciary duty and fraud. Pasternack amended his arbitration claim to add what he described as an "[a]ction for accounting, appointment of receiver, and derivative action for recovery against management for fraud and embezzlement." Pasternack later filed a

---

[2] Charles, Joseph, and Kristie have the same surname; therefore, we refer to them by their first names to avoid confusion.

3

superior court action against CPRI, Charles, and Doe defendants, asserting causes of action for "relief based on rescission," "damages for fraud," and money had and received. The parties stipulated to stay that matter and resolve it in the arbitration.

Between July 26, 2010, and July 29, 2010, the arbitrator conducted arbitration proceedings, and the parties submitted posthearing briefs.

On October 7, 2010, the arbitrator declared the matter closed for purposes of gathering evidence regarding the underlying dispute.

On October 29, 2010, the arbitrator issued an "Interim Award" adjudicating the parties' rights, and rejecting Pasternack's claim Charles had committed fraud. The arbitrator concluded: "The evidence established that the intent of the parties was to have net operating income or loss flow through to the owners [Joseph], Kristie and [Pasternack]. This was to be done by having . . . WCE[ ] own the restaurant. CPRI then was formed and was to be a Subchapter S corporation so the 'flow-through' could be accomplished in the corporate form rather than the limited liability form. . . . [¶] When the initial plan for the tax treatment to be handled through CPRI was frustrated, the attorneys for all parties considered how to rectify the situation with no apparent resolution according to the evidence. The evidence has WCE filing tax returns at least through 2006 while CPRI filed tax returns at least through 2008." (Footnotes omitted.) Rejecting Pasternack's claim for money had and received, the arbitrator ruled that in return for his investment, Pasternack had received a 35 percent interest in the restaurant business. In rejecting the alter ego claim, the arbitrator ruled, "[Pasternack] was as involved, if not more involved, than [Charles] in the operation of the restaurant.

4

Recognizing the shield of the corporate form of CPRI does not sanction fraud or promote injustice to the damage of [Pasternack]."  The arbitrator summarized his ruling on the substantive claims:  "Pasternack shall recover nothing pursuant to his Demand for Arbitration against Respondents CPRI and Charles Capozzoli that he is entitled to rescind the Stock Purchase Agreement and to collect damages against CPRI and Charles Capozzoli for fraud and for money had and received."

However, a provision in the interim award stated the arbitrator was reopening the case for the limited purpose of allowing the parties to brief "the issue of attorneys' fees, if any, to be awarded in this action."  The arbitrator stated in the last paragraph of the interim award:  "This Award is in full settlement of all claims submitted to this Arbitration.  All claims, except those related to fees and costs, not expressly granted herein are hereby denied.  This Award shall remain in full force and effect until such time as a Final Award is rendered."

In November 2010, the arbitrator issued two amendments to the Interim Award to correct typographical matters and minor omissions.

On December 7, 2010, Pasternack petitioned the arbitrator to reopen the hearing to address his allegations that Joseph and Kristie had committed fraud by not informing the arbitrator they had wasted, destroyed and looted CPRI's essential operating assets, thus rendering Pasternack's ownership interest valueless.  Further, Pasternack claimed Joseph and Kristie had recently filed a misleading bankruptcy petition.

On December 16, 2010, the arbitrator denied as untimely Pasternack's petition to reopen arbitration proceedings.  The arbitrator recognized Pasternack had produced

credible evidence of fraud: "The circumstances recounted in the letters from [Pasternack's] counsel . . . are disturbing. The photographs and copy of the bankruptcy petition of Joseph and Kristie Capozzoli are credible evidence and not disputed by either Charles Capazzoli or Capazzoli's Pizzeria & Restaurant, Inc." The arbitrator cautioned that "there are other plausible inferences which can be drawn from the same evidence on which [Pasternack's] counsel relies." Nonetheless, the arbitrator relied on AAA Rule 36, which states: "The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made." The arbitrator ruled: "The Post-Mediation Order dated July 29, 2010, stated that upon a filing of a Reply Brief by Petitioner, the matter would stand submitted. The Interim Award dated October 29, 2010, decided all issues other than the possible award of attorneys' fees and costs. . . . The Interim Award . . . specifically provided for a reopening only to consider an award of attorneys' fees and costs. The final paragraph of the Interim Award states that it 'is in full settlement of all claims submitted to this Arbitration and that it shall remain in full force and effect until such time as a Final Award is rendered.[']" Addressing Pasternack's specific claim that Joseph and Kristie had committed fraud, the arbitrator ruled, "There is no evidence of exactly when the restaurant was closed and the furnishings and fixtures were removed so completely, leaving the leased premises in what appears from the photographs as a deplorable state. The bankruptcy petition of Joseph and Kristie was filed on November 28, 2010, a month after issuance of the Interim Award. The events on which [Pasternack] relies took place after the issuance of the Interim Award. [¶] . . . The Interim Award became final no later than November 24, 2010." (Footnote omitted.)

6

On December 22, 2010, the arbitrator issued the final award, addressing only attorneys' fees and costs. The arbitrator resolved the issue of prevailing party thusly: "[Pasternack] prevailed on the initial issue of whether he was a stockholder in CPRI while CPRI and [Charles] prevailed on the issue of whether [Charles] and CPRI fraudulently induced [Pasternack] to purchase his stock in CPRI." The arbitrator's main award of fees and costs was in the amount of $33,733.00 to CPRI, and $41,229.24 to Charles.

Thereafter, Pasternack filed in the superior court a notice of intent to move to vacate the final arbitration award.

In January 2011, Charles and CPRI filed petitions in the superior court to confirm the final arbitration award, and sought interest from December 22, 2010.

On May 6, 2011, the superior court issued a minute order granting respondents' petition to confirm the arbitration award, and denying Pasternack's petition to vacate it. The court ruled: "[T]he arbitrator correctly concluded that it lacked jurisdiction to reopen the hearing. As such, Plaintiff has failed to establish that the arbitrator improperly refused to hear evidence material to the controversy. [Citation.] [¶] The interim order, although labeled as 'interim' was a final determination as to the liability on the complaint. The [arbitrator] reopened the arbitration hearing for the sole purpose of determining attorneys' fees and costs. Further, the interim order finally determined that 'All claims, except those related to fees and costs, not expressly granted herein are hereby denied.' "

7

The court requested that respondents submit a proposed judgment within 10 days. They did so, and included a provision regarding prejudgment interest: "Pursuant to the Arbitrator's December 22, 2010[ ] award of attorney's fees and costs in the arbitration, defendants are entitled to recover the following amounts from plaintiff, Lawrence Pasternack, and defendants are awarded judgment against [plaintiff] for these amounts: [¶] a. for defendant Capozzoli's Pizzeria and Restaurant, Inc., $36,608.44. [¶] b. for defendant Charles J. Capozzoli, $43,270.46. [¶] . . . Defendants are entitled to prejudgment interest [at 10 percent] per annum on the foregoing amounts from December 22, 2010, to the date of entry of this judgment."

On May 19, 2011, the court approved respondents' proposed judgment.

On May 24, 2011, Pasternack objected to the court's proposed judgment and, as relevant here, the provision awarding prejudgment interest, arguing, "Prejudgment interest is only available in certain instances flowing from *economic damages* for loss of use of funds or property. [Citation.] Since prejudgment interest is an element of damages, not costs, it cannot be granted pursuant to an award of attorney's fees and/or costs. [Citation.] Thus, as the only items being awarded to defendants in the judgment are fees and costs, not damages, prejudgment interest is wholly inappropriate and the offending language must be stricken."

On May 27, 2011, Charles responded to Pasternack's objections regarding prejudgment interest. That same day, the court issued a brief "amended judgment,"

8

which differed from its previous judgment only in that it excluded prejudgment interest. The court did not explain its change.[3]

On June 3, 2011, Pasternack appealed from the court's amended judgment.[4]

## DISCUSSION

### I.

Pasternack contends that in light of the additional evidence regarding fraud that he had presented to the arbitrator between the interim award and the final award, the arbitrator was required to reopen the arbitration proceedings and give him an opportunity to gather more evidence and develop his claims Joseph and Kristie had committed waste. By declining to do so, the arbitrator thwarted the parties' will and failed to finally resolve their claims, and provided grounds for the court to vacate the arbitrator's final award

---

3    The amended judgment states in its substantive entirety:  "Plaintiff shall take nothing from Defendants.  [¶]  Pursuant to the Arbitrator's December 22, 2010 award of attorney's fees and costs in the arbitration, Defendants are entitled to recover the following amounts from Plaintiff Lawrence Pasternack, and Defendants are awarded judgment for these amounts:  [¶]  a. for Defendant Capozzoli's Pizzeria and Restaurant, Inc., $36,608.44.  [¶]  b. [f]or Defendant Charles J. Capozzoli, $43,270.46.  [¶] Defendants shall recover costs in the amount of $_____."

4    Charles questions whether Pasternack appeals from the correct judgment because his notice of appeal misstates the year the judgment was issued, as May 27, 2010. Moreover, Charles claims that the correct appealable judgment was that issued on May 19, 2011.  We must liberally construe Pasternack's notice of appeal.  (Cal. Rules of Court, rule 8.100(a)(2).)  Applying this rule of liberal construction, and in light of the fact there was no judgment dated May 27, 2010, we deem that he intended to appeal from the May 27, 2011 amended judgment, but clearly made a typographical error.  Although we will conclude in Part II that the May 27, 2011 amended judgment was unauthorized and therefore we will reverse it, any error is not attributable to Pasternack.  We conclude Pasternack filed a timely notice of appeal from the amended judgment.  (*Id*. rule 8.104(a).)

because the arbitrator had failed to consider further Pasternack's evidence regarding waste (Code Civ. Proc.,[5] § 1286.2, subd. (a)(5)) or alternatively, the final award was a product of fraud, corruption or other undue means.  (§ 1286.2, subd. (a)(1).)

California law reflects a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution' [and therefore] courts will ' "indulge every intendment to give effect to such proceedings." ' "  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)  To further that policy, arbitration awards are generally final.  (*Id*. at p. 10.)  Unless the parties' contract expressly provides otherwise or certain exceptional circumstances exist, courts may review an arbitration award only on the extremely narrow statutory grounds identified in sections 1286.2 and 1286.6.  (*Moncharsh*, at pp. 27-28, 32; see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340.)

Section 1286.2 authorizes a court to vacate an arbitration award if (1) "[t]he award was procured by corruption, fraud or other undue means"; (2) "[t]here was corruption in any of the arbitrators"; (3) "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator"; (4) "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"; (5) the arbitrator substantially prejudiced a party's rights by refusing to postpone the hearing despite a showing of good cause or by refusing to hear material evidence; or (6) the arbitrator failed to make the required disclosures or

_____

5       All statutory references are to the Code of Civil Procedure unless otherwise stated.

10

disqualify himself or herself based upon a proper request. Section 1286.6 sets forth the limited circumstances under which a court may correct and then confirm the award.

"On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892, fn. 7.)

Here, two months after expiration of the October 7, 2010 date set by the arbitrator as the deadline for submission of evidence regarding the parties' underlying claim, Pasternack presented new evidence to support his claim of fraud. The arbitrator did not reject that evidence, but instead received and considered it. However, the arbitrator made a threshold determination that other plausible inferences could be drawn from the same evidence. In declining to reopen the proceedings to permit Pasternack to develop the record further on the claim of waste, the arbitrator acted within the discretion granted to him under AAA Rule 36. In light of the deference we accord an arbitrator's exercise of his discretion, we conclude the trial court did not err in declining to vacate the arbitration award. (Accord, *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1091 ["An arbitrator who decides not to impose a particular sanction required by the discovery statutes has not exceeded his or her power, but declined to exercise it. Whether that decision was correct is not an issue that is subject to judicial review."].)

11

II.

Charles cross-appeals, contending the judgment entered on May 19, 2011, which includes an award of prejudgment interest for respondents, is the operative judgment because it is the sole permissible one under section 473, subdivision (d), which allows the trial court to correct only clerical errors. He argues that judgment was correct on the merits. By contrast, Charles contends the May 27, 2011 amended judgment was void for lack of jurisdiction because it was a judicial correction of the first judgment and, further, it erroneously excluded an award of prejudgment interest. We agree.

"The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered. However, it may not amend such a judgment to substantially modify it or materially alter the rights of the parties under its authority to correct clerical error. [Citations.] This general rule is applicable even though time for appeal from the judgment has not yet passed. [Citation.] [¶] Once judgment has been entered, the trial court does retain jurisdiction for a limited period of time to entertain and grant a motion for a new trial [citation] or a motion for a judgment notwithstanding the verdict. [Citation.] The court also retains jurisdiction to consider and grant a motion to vacate a judgment and enter a different judgment for either of two reasons: an incorrect or erroneous legal basis for the decision, not consistent with or supported by the facts, or a judgment not consistent with or not supported by the special verdict. [Citation.] The court also retains jurisdiction to entertain and grant a motion for relief from a judgment taken against a party through mistake, inadvertence, surprise, or

12

excusable neglect."  (*Craven v. Crout* (1985) 163 Cal.App.3d 779, 782-783; see also 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 67, pp. 603-604.)

Although Pasternack maintains that the trial court's entry of the amended judgment constituted clerical error, it plainly appears and we decide as a matter of law that in entering the amended judgment the court was attempting to correct perceived judicial error.  It is true that a court has the inherent power to correct clerical error in its records at any time so as to conform its records to the truth, but it may not amend a judgment to substantially modify it or materially alter the rights of the parties under its authority to correct clerical error.  (*Aspen Internat. Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1204.)  Here, the court's signing of the amended judgment, which eliminated the prejudgment interest, thus substantially altering the judgment, can only be viewed as an attempt to correct prior perceived judicial error in granting that interest.  The trial court had no jurisdiction to so amend the judgment, and the resulting amended judgment is thus void and of no effect.  (*Morgan v. State Bd. of Equalization* (1949) 89 Cal.App.2d 674, 682.)

On the merits, the court's May 19, 2011 judgment correctly awarded prejudgment interest.  Civil Code section 3287 provides that a party may recover prejudgment interest on an amount awarded when the damages are certain, or capable of being made certain by calculation, and the right to recover those damages is vested.  (*County of Solano v. Lionsgate Corp.* (2005) 126 Cal.App.4th 741, 753.)  If the statutory conditions are satisfied, the court must award prejudgment interest.  (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958.)  The purpose of prejudgment interest

13

is to compensate the prevailing party for the loss of money during the period before the judgment is entered.  (*Ibid*.)

Civil Code section 3287 applies to arbitration awards.  A prevailing party in arbitration is entitled to prejudgment interest as of the date of the final award to entry of judgment.  (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 27-28; *Britz, Inc. v. Alfa-Laval Food & Dairy Co*. (1995) 34 Cal.App.4th 1085, 1106.)  "Although the interest [is] pre-'judicial judgment,' it [is] post-'contractual judgment.' "  (*Britz*, *supra*, at p. 1107.)  Here, the trial court was required to award the respondents the requested prejudgment interest.

Pasternack makes no attempt to explain why this case falls outside the purview of *Britz*, *supra*, 34 Cal.App.4th 1085 and *Pierotti v. Torian*, *supra*, 81 Cal.App.4th at pp. 27-28.  In fact, he fails to mention those cases in his reply brief.  Rather, he relies on *North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, claiming Charles at no time moved for an award of prejudgment interest, but rather "slip[ped] the request into his proposed judgment.  At that time it was too late.  And, moreover, the trial court determined, in its discretion, that [Charles] should not be granted prejudgment interest."  But *North Oakland Medical Clinic v. Rogers*, *supra*, 65 Cal.App.4th 824 is inapplicable here.  As noted, both respondents timely requested prejudgment interest when they petitioned the court to confirm the arbitration award.  Therefore, Pasternack is incorrect to the extent he claims that neither he nor the court knew of the request before Charles submitted his proposed judgment.  Moreover, under Civil Code section 3287, subdivision (a), the court did not have discretion regarding whether to award prejudgment interest.  In that regard, this case is different from other cases in which the damages are unliquidated,

14

and the court has discretion to award prejudgment interest under Civil Code section 3287, subdivision (b).

DISPOSITION

The May 27, 2011 judgment is reversed. The matter is remanded and the trial court is directed to reinstate the May 19, 2011 judgment. Costs on appeal are awarded to Donna Marie Capozzoli and Janine Bayme as Special Administrators of the Estate of Charles J. Capozzoli.


O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


McDONALD, J.

15